IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CHEMIUM INTERNATIONAL CORP., § § **Plaintiff,** § § v. § § GULF TRADING, LLC, § JOHN STIMPSON, and § JUAN JOSE FERRUA MONTES § DE OCA, § § **Defendants.** § | CIVIL ACTION NO.: 4:20-cv-00169 JURY DEMANDED |

**PLAINTIFF CHEMIUM INTERNATIONAL CORP.'S
ORIGINAL COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff Chemium International Corp. files this Original Complaint against Defendants Gulf Trading, LLC, John Stimpson, and Juan Jose Ferrua Montes De Oca, and would respectfully show the Court as follows:

### I.   PARTIES

1. Plaintiff Chemium International Corp. ("Chemium") is a Texas corporation with its principal place of business in Houston, Texas.

2. Defendant Gulf Trading, LLC ("Gulf Trading") is an Alabama limited liability company with its principal place of business at 620 Baybridge Road, Mobile, Alabama, 36610. According to records available from the Alabama Secretary of State, the sole member of Gulf Trading is Gulf Lumber Company, Inc., an Alabama corporation which maintains its principal place of business in Mobile County, Alabama. Gulf

Trading can be served through its registered agent for service of process, Benjamin C. Stimpson, Jr., 1850 Conception St., Mobile, Alabama 36610.

3. Defendant John Stimpson is an individual that, upon information and belief, resides at 16465 Scenic Highway 98, Fairhope, Alabama. Mr. Stimpson is also the president of Gulf Trading.

4. Defendant Juan Jose Ferrua Montes De Oca is an individual that, upon information and belief, resides at Avenue Nunez de Caceres # 366, Corporate Building NC, Ensanche El Millon, Santo Domingo de Guzman, Dominican Republic. Mr. Ferrua was an employee or agent of Gulf Trading.

## II. JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 as the parties are citizens of different states and the amount in controversy exceeds $75,000.

6. Venue is appropriate in this District under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this claim occurred in this judicial district.

## III. FACTUAL BACKGROUND

7. Chemium is a global, integrated trading company involved in the business of crude oil condensates, naphthas, distillates, gasoline components, petrochemicals, and thermoplastic resins. Chemium's principals are Sanjeev Vora, Thomas Holzman, and Ofer Levy.

8. Gulf Trading is a global forest products trading and financing company headquartered in Mobile, Alabama. Gulf Trading employs a network of agents that

conduct business in more than 30 countries and maintains offices and/or facilities in Mobile, Alabama, Tampa, Florida, Augusta, Georgia, China, India, Argentina, Dominican Republic, and Sweden.  Gulf Trading is controlled by Mr. Stimpson.

9.   Messrs. Holzman and Ferrua have been friends for approximately eight years.  While they have discussed numerous business dealing throughout their friendship nothing ever materialized from such discussions until 2018.

10.   In early 2018, Mr. Ferrua approached Mr. Holzman to discuss a possible business arrangement between Gulf Trading and Chemium.  Mr. Ferrua also represented himself to be a shareholder of Gulf Trading.

11.   According to Mr. Ferrua, Gulf Trading had business opportunities in the lumber business but lacked the capital necessary to pursue these opportunities.  Thus, Mr. Ferrua asked Mr. Holzman whether Chemium would be interested in financing Gulf Trading's lumber transactions in exchange for a participation in the profits from such business.  Although Chemium was not involved in either the finance or lumber business, Mr. Holzman discussed the proposal with his partner.

12.   On or around April 5, 2018, the parties had a meeting at Chemium's office in Houston, Texas.  The meeting was attended by Thomas Holzman, Ofer Levy, Juan Jose Ferrua Montes De Oca, and John Stimpson.  At this meeting, Messrs. Ferrua and Stimpson made a presentation regarding the proposed business deal between Gulf Trading and Chemium.  Messrs. Ferrua and Stimpson stated that the proposed financing transaction would involve Chemium providing the capital necessary for Gulf Trading to purchase lumber and, most importantly, Chemium providing invoices that Gulf Trading

1003457

would send to its customers, including instructions that payment would be made directly to Chemium's bank account. Upon receipt of payment from Gulf Trading's customers, Chemium would retain its fifty-percent share of the profits and the corresponding lumber acquisition cost and Chemium would remit the remaining amount to Gulf Trading. Chemium agreed to the terms represented by Gulf Trading.

13. Shortly after concluding the April 2018 meeting, Chemium began financing Gulf Trading's lumber purchases. Since the inception of this deal, Chemium has provided more than $800,000 for lumber purchases. Chemium also prepared invoices so that Gulf Trading's customers would know to remit payment directly to Chemium. Chemium provided these invoices to Gulf Trading so that Gulf Trading could send these invoices to its customers. Gulf Trading, however, despite representing that it would send Chemium's invoices to its customers and that Chemium would be paid directly by Gulf Trading's customers, did not fulfill these promises.

14. Gulf Trading did not send Chemium's invoices to Gulf Trading's customers, but instead Gulf Trading sent invoices on its own letterhead to these customers. Indeed, rather than being instructed to remit payment directly to Chemium, Gulf Trading's customers were instructed to remit payment directly to Gulf Trading. On information and belief, Gulf Trading simply threw the Chemium invoices away. Indeed, it is clear that Messrs. Stimpson and Ferrua merely represented that Chemium would be paid directly by Gulf Trading's customers in order to induce Chemium into the transaction. It is similarly clear that Messrs. Stimpson and Ferrua knew that their representations were false at the time they made them to Chemium.

4

15. Since Chemium's invoices were not presented to Gulf Trading's customers, Chemium never received any payments from Gulf Trading's customers. Rather, the customers paid Gulf Trading directly. Although, as noted above, Chemium provided more than $800,000 in financing for lumber purchases, Chemium has not received its fifty-percent share of the profits and has not been fully repaid by Gulf Trading.

16. As time passed without any payments from Gulf Trading, Mr. Holzman began reaching out directly to Mr. Ferrua to get answers. Mr. Ferrua, however, simply provided excuses. One day Mr. Ferrua represented that funds would be sent to Chemium but he missed the wire transfer cut-off. The next day the excuse became that he was waiting on Mr. Stimpson's approval to remit funds to Chemium. As with Messrs. Stimpson's and Ferrua's representation regarding Chemium's invoices, these statements were also false.

17. At his wits end, on October 26, 2018, Mr. Holzman wrote to Mr. Ferrua and stated as follows:

> Dear JJ: I am writing this and keep it between two of us from the Chemium side. I am doing it in English for you to show it to John if you want. As you well know that I have gone out of my way to help you despite your lumber business does not fit our portfolio. We are not in finance business and had tremendous resistance to move forward. Convincing was not easy but together with you and me, trust was built that is today fading away. I begged Ofer to put a trust in me and allow to go forward. I assured him that JJ is the one person I trust as I would trust my family. Today, I have no defense when Sanjeev and Ofer are convinced that you are making excuses and passing time. For example, in whats app First you said, I missed the cut-off today and it will be done tomorrow. Next day, you said, I am waiting on John's signature. How is it possible for both of your statements to be

5

> true? You are personally causing me a great deal of friction internally between three of us. Banks have given us the ultimatum and I ask you to do me a favor to calm the situation. I still see you as a great friend and hope to be your friend but your actions or lack of actions are putting us in a bad financial position. Please help as I am speaking to my friend from the bottom of my heart.

18. As usual, despite this e-mail, Mr. Ferrua did not cause Gulf Trading to make any payments to Chemium.

19. Over the next several months, Mr. Holzman continued to speak to Mr. Ferrua regarding the status of the money owed to Chemium, and Mr. Ferrua continued to acknowledge that Gulf Trading owed the funds to Chemium and promised that Gulf Trading would make good on their obligations. Despite such promises, Mr. Ferrua continued his pattern of false promises. For example, on October 30, 2018, Mr. Ferrua promised to wire funds to Chemium and promised to provide Mr. Holzman with a wire transfer confirmation. The wire transfer confirmation provided by Mr. Ferrua, however, turned out to be fraudulent. Not surprisingly, the promised funds never arrived in Chemium's account.

20. Once again, on November 13, 2018, Mr. Ferrua promised Mr. Holzman that a wire transfer for $400,000 to Chemium had been completed and just had to be processed. Chemium never received such wire transfer despite Mr. Ferrua's representation that it had been completed.

21. On November 25, 2018, Mr. Ferrua stated that Gulf Trading's failure to make payments to Chemium was Mr. Stimpson's disguised intention all along. Indeed, Mr. Ferrua stated as follows: "Thomas, I hope you understand my situation as well as I

6

understand yours. In the end I think that the same John [Stimpson] became very evident of what was his intention from the beginning, and more having charged everything without passing it to Chemium."

22. Subsequently, Mr. Ferrua made a few payments to Chemium on Gulf Trading's behalf but a significant amount of the money owed to Chemium by Gulf Trading remains unpaid.

23. Thereafter, Chemium reached out to Mr. Stimpson about money owed to Chemium by Gulf Trading. Mr. Stimpson has acknowledged that Gulf Trading owes the money to Chemium but has not caused Gulf Trading to remit any funds to Chemium.

## IV. CAUSES OF ACTION

**Count 1:**   BREACH OF CONTRACT (Against Gulf Trading)

24. Chemium incorporates the factual allegations set forth above in paragraphs 1 through 23.

25. Chemium agreed to finance Gulf Trading's lumber purchases in exchange for a fifty percent share of the profits related to such transactions.

26. Chemium provided the financing necessary to execute the transactions but Gulf Trading failed to provide Chemium with its share of the profits or repay the money provided to finance such transactions.

27. Chemium has suffered damages in excess of $300,000 plus interest, and its share of the profits associated with the transactions.

28. Chemium has incurred attorneys' fees which it is entitled to recover pursuant to TEX. CIV. PRAC. & REM. CODE § 38.001.

1003457

**Count 2:**         FRAUD (Against All Defendants)

29. Chemium incorporates the factual allegations set forth above in paragraphs 1 through 28.

30. Defendants represented to Chemium that as part of a financing transaction they would present Chemium invoices to Defendants' customers with payment instructions directing payments to be made directly to Chemium. Defendants knew such representation was false when made. Chemium relied upon such representation in agreeing to such transaction.

31. As a result of Defendants misrepresentation, Chemium has suffered damages in excess of $300,000.

**Count 3:**         UNJUST ENRICHMENT (Against All Defendants)

32. Chemium incorporates the factual allegations set forth above in paragraphs 1 through 31.

33. Chemium has provided Defendants with in excess of $800,000 to finance certain lumber transactions with the expectation that Defendants would repay such funds and a share of the profits. Defendants, however, retained a significant portion of the funds received from Chemium without repaying Chemium .

34. As a result of Defendants conduct Chemium has suffered damages in excess of $300,000.

1003457

**Count 4:**      MONEY HAD AND RECEIVED

35. Chemium incorporates the factual allegations set forth above in paragraphs 1 through 34.

36. As a result of these transactions, Defendants hold money which in equity and good conscience belongs to Chemium .

## V. CONDITIONS PRECEDENT

37. All conditions precedent have been performed or have occurred.

## VI. JURY DEMAND

38. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Chemium hereby requests a trial by jury on all issues so triable.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Chemium International Corp. demands judgment in its favor against Defendants as follows::

    a) actual damages, including attorneys' fees, against Gulf Trading, LLC for breach of contract ;

    b) actual damages against Gulf Trading, LLC, John Stimpson, Juan Jose Ferrua Montes De Oca for fraud, unjust enrichment, and money had and received;

    c) punitive damages against Gulf Trading, LLC, John Stimpson, Juan Jose Ferrua Montes De Oca for fraud; and

    d) costs of court and all other relief to which Chemium is entitled in equity or law.

1003457

Respectfully submitted,

/s/ Paul Galante
   Paul A. Galante
   Attorney-in-Charge
   State Bar No. 24090833
   Federal ID No. 2742834
   (713) 634-3606  Direct
   pgalante@pierceoneill.com

PIERCE & O'NEILL, LLP
4203 Montrose Boulevard
Houston, Texas 77006
(713) 634-3600   Main
(713) 634-3601   Fax

OF COUNSEL:

Brian K. Tully
State Bar No. 24039217
Federal ID No. 569707
btully@pierceoneill.com
PIERCE & O'NEILL, LLP
4203 Montrose Boulevard
Houston, Texas 77006
(713) 634-3608  Direct
(713) 634-3600  Main
(713) 634-3601  Facsimile

ATTORNEYS FOR PLAINTIFF
CHEMIUM INTERNATIONAL CORP.

1003457